THE FOOTE-BURT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13445. Promulgated May 24, 1948.

*Theodore R. Colborn, Esq.*, for the petitioner.
*Clarence E. Price, Esq.*, for the respondent.

OPINION.

LeMire, *Judge*: The petitioner's sole contention here is that the capital stock of Hammond, which it purchased in 1940, was an "emergency facility" within the meaning of section 124, Internal Revenue Code, the cost of which it is entitled, at its election, to amortize at the rate specified in the statute. Apparently, this question is one of first impression.

The material provisions of section 124 are as follows:

SEC. 124. AMORTIZATION DEDUCTION.

(a) GENERAL RULE.—Every person, at his election, shall be entitled to a deduction with respect to the amortization of the adjusted basis (for determining gain) of any emergency facility (as defined in subsection (e)), based on a period of sixty months. Such amortization deduction shall be an amount, with respect to each month of such period within the taxable year, equal to the adjusted basis of the facility at the end of such month divided by the number of months (including the month for which the deduction is computed) remaining in the period. Such adjusted basis at the end of the month shall be computed without regard to the amortization deduction for such month. The amortization deduction above provided with respect to any month shall, except to the extent provided in subsection (g) of this section, be in lieu of the deduction with respect to such facility for such month provided by section 23 (l), relating to exhaustion, wear

and tear, and obsolescence. The sixty-month period shall begin as to any emergency facility, at the election of the taxpayer, with the month following the month in which the facility was completed or acquired, or with the succeeding taxable year.

\* \* \* \* \* \* \*

(e) DEFINITIONS.—

(1) EMERGENCY FACILITY.—As used in this section, the term "emergency facility" means any facility, land, building, machinery, or equipment, or part thereof, the construction, reconstruction, erection, installation, or acquisition of which was completed after December 31, 1939, and with respect to which a certificate under subsection (f) has been made. \* \* \*

The Commissioner's regulations (sec. 29.124–0 of Regulations 111, as amended by T. D. 5432, 1945 C. B., p. 180) define "emergency facility" as follows:

(b) "Emergency facility" means any facility, land, building, machinery, or equipment, or any part thereof—

(1) the acquisition of which occurred after December 31, 1939, or the construction, reconstruction, erection, or installation of which was completed after such date, and

(2) any part of the construction, reconstruction, erection, installation, or acquisition of which has, under such regulations as may be prescribed by the Secretary of War and the Secretary of the Navy, or the Chairman of the War Production Board, or his duly authorized representative, with the approval of the President, been certified by the certifying officer as necessary in the interest of national defense during the emergency period.

The word "facility" is defined in Webster's New International Dictionary, 2d ed., as "A thing that promotes the ease of any action, operation, transaction, or course of conduct."

In *Corona Coal Co.* v. *United States*, 21 Fed. (2d) 489; affd., 23 Fed. (2d) 673 (C. C. A., 5th Cir.), the court said that " 'Convenient means' is perhaps a complete definition of 'facility.' " The court there had under consideration the question of whether the openings and development of coal mines were facilities contributing to the prosecution of the war within the meaning of section 234 (a) (8) of the Revenue Act of 1918. The statute there under consideration permitted a "reasonable deduction" for the amortization of "buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired" for the prosecution of the first World War. The mine openings and developments were held to be within the meaning of the term "facilities." The court there rejected the Commissioner's effort "to place a technical limitation on the operation of the statute by the application of the doctrine of ejusdem generis \* \* \* and the maxim noscitur a sociis," as the Commissioner proposes in the instant case, saying that these were not fixed rules of statutory construction; that, since the particular words, "buildings, machinery, and equipment" exhausted the class, full import should be accorded the general term "other facilities"; and that:

The manifest purpose of the act was to afford relief to taxpayers who increased production of articles contributing to the prosecution of war. The means adopted by the act were to permit a deduction measured by proper amortization of the cost to the taxpayer of appropriate facilities. There is no limitation of "articles" to a kind or class. Neither is there a limitation of "facilities." The facilities, then, may differ as widely as the articles. * * *

The court further pointed out that the statutory provision under consideration was a relief measure and therefore must be liberally construed in favor of the taxpayer.

In *Briggs Mfg. Co.* v. *United States*, 30 Fed. (2d) 962, the court said of this same provision of the statute (sec. 234 (a) (8) of the Revenue Act of 1918) that: "The scope of the statute, as I read it, almost defies limitation," and that no "instrumentality" for the production of articles of war is excluded from the operation of the statute.

Assuming that the statutory term "facility" can be given a sufficiently broad construction to include shares of stock, there still remains unanswered our question, whether such a construction would conform to the congressional intent.

Turning to the legislative history of the enactment, we find that in the draft of the House bill (H. R. 10413), as presented to the Senate, and also in the bill as reported by the Senate Finance Committee, the word "facility" did not appear in the definition of "emergency facility," contained in section 124 (e). The bill then read: "As used in this section, the term 'emergency facility' means any land, building, machinery, or equipment, or part thereof."

The report of the Committee on Ways and Means on this provision of the bill reads, in part, as follows:

Title II of the bill adds to the Internal Revenue Code a new section to be designated as section 124 and a new subsection designated section 23 (t) to authorize the allowance of a deduction for the cost of certain facilities necessary in the interest of national defense during the present emergency. Section 124 provides that a corporation shall be allowed a deduction for income and excess-profits tax purposes for the amortization of certain facilities which the Advisory Commission to the Council of National Defense and either the Secretary of War or the Secretary of the Navy certify as necessary in the interest of national defense during the present emergency. Such facilities are land, buildings, machinery and equipment or parts thereof acquired after July 10, 1940, or the construction, reconstruction, erection, or installation of which was completed after July 10, 1940. In order to be effective for the purpose of the amortization allowance, such certification must have been made before (1) the beginning of such construction, reconstruction, erection, or installation, or the date of such acquisition, or (2) the sixtieth day after the date of the enactment of the bill, whichever of such dates is the later. Although a facility may be an emergency facility even though its construction was begun on or before July 10, 1940, only so much of its adjusted basis as is attributable to certified construction taking place after July 10, 1940, is subject to amortization. The remainder of the adjusted basis is subject to depreciation. Capital additions, whether or not the cost thereof is covered by a certificate, may not be added to the adjusted basis for amortization as determined under a prior certificate. If certified, a new amortization period

begins relative to the cost of such capital additions. The amortization of the adjusted basis of such facilities is to be spread over a period of 60 months, the deduction to be in lieu of the present deduction for exhaustion, wear, and tear, and obsolescence provided for in section 23 (1) of the Internal Revenue Code. The 60-month period shall begin as to any emergency facility, at the election of the taxpayer, with the month following the month in which the facility was completed or acquired, or with the succeeding taxable year.

The Senate Finance Committee report states that: "Your committee extended the amortization deduction benefits to certified *construction* after January 1, 1940, in place of July 10, 1940, as provided in the House Bill." [Italics supplied.]

The word "facility" was inserted before the word "land" on the proposal of Senator Harrison, Chairman of the Finance Committee, as a "clarifying amendment." This amendment was referred to in the conference report as follows:

This is a clarifying amendment expanding the definition of the term "emergency facility" to include any facility which meets the required conditions, as well as land, buildings, machinery, or equipment, in terms of which the definition in the House bill was phrased. This is to make certain that the cost of dry docks, channels, airports, and similar facilities may be amortized. The House recedes.

We think that the history of the enactment of the statute shows clearly that shares of corporate stock are not the type of property to which Congress intended the wartime amortization deduction provisions to apply. A share of stock in a corporation is not in itself a thing, or a "facility," which can be used for producing anything. It merely symbolizes ownership of such facilities. It is not something to be constructed or created or utilized in the process of manufacturing or producing any war commodity. It does not suffer deterioration through usage and is not subject to depreciation or exhaustion. In this connection it is especially significant that the amortization deductions are to be taken "in lieu of the deduction with respect to such facility for such month provided by section 23 (1), relating to exhaustion, wear and tear, and obsolescence." (Sec. 124 (a), *supra*.)

It is not shown or even claimed here that the full statutory depreciation or exhaustion deductions allowable on the assets of the subsidiary corporation were not allowed, or were not allowable, in the subsidiary's returns for the taxable year involved in this proceeding. To permit the petitioner additional amortization deduction on the shares of stock evidencing the ownership of these assets would be to allow a double deduction, which Congress expressly forbade. The petitioner did not suffer any loss on its investment in the subsidiary stock, but actually realized a capital gain.

We think that the petitioner's claim for an amortization deduction, based on the cost of the stock, is without merit.

Reviewed by the Court.

*Decision will be entered for the respondent.*